IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JUDITH L. BLESSING, Individually and as a Representative of the Estate of Gary L. Blessing, Deceased;<br><br>Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>Defendant. | 4:14CV3023<br><br>**MEMORANDUM AND ORDER** |

The defendant Union Pacific Railroad Company has moved to transfer venue to the United States District Court for the Northern District of Iowa, Sioux City Division. (Filing No. 14). The railroad argues a Sioux City trial location would be the most convenient for the parties and witnesses and would better serve the interests of justice. See 28 U.S.C. § 1404 (a). For the following reasons, the motion to transfer is granted.

STATEMENT OF FACTS

The plaintiff, decedent Gary L. Blessing, was from Sioux City, Iowa. (Filing No. 16-2, at CM/ECF p. 2). His wife and personal representative lives in Sioux City, Iowa.

Blessing served in the Iowa National Guard from 1955 to 1956, and worked in Sioux City, Iowa for Midwest Poultry from 1956 to 1959; Rosenthal Fruit Company from 1959 to 1963; Pittsburgh paint from 1963 to 1965, and Pepsi-Cola from 1965 to 1967. (Filing No. 16-2, at CM/ECF p. 3). Blessing began his railroad career for Union Pacific and its predecessor in 1967, working as a switchman and an engineer until 2000. Switchman duties were performed near Sioux City, Iowa. (Filing No. 24-5, p. 7). As an engineer, Blessing travelled to locations in Nebraska, including South Sioux City, Fremont, and Omaha, Nebraska, (Filing No. 18, at CM/ECF p. 5), and to St. James, Minnesota and Council Bluffs, Iowa, (Filing No. 24-3, pp. 4-7). Throughout his entire railroad career, Blessing was

assigned to the Sioux City Division and his home terminal was located in Sioux City, Iowa. ([Filing No. 16-2, at CM/ECF p. 2](Filing No. 16-2, at CM/ECF p. 2); [Filing No. 24-3, pp. 5-6](Filing No. 24-3, pp. 5-6); [Filing No. 24-6, at CM/ECF p. 3](Filing No. 24-6, at CM/ECF p. 3)).

Blessing was allegedly exposed to asbestos during the 33-year course of his railroad employment. He alleges he was diagnosed by his physicians in Sioux City, Iowa with adenocarcinoma of the lung in February of 2011, and after re-reading his chest x-rays, Dr. Mark S. Klepper, a physician from Woodway, Texas, diagnosed interstitial lung disease compatible with asbestosis on August 15, 2012. ([Filing No. 18, at CM/ECF p. 4-5](Filing No. 18, at CM/ECF p. 4-5)). Blessing received treatment for his cancer at St. Luke's Hospital in Sioux City, Iowa.

Union Pacific's national headquarters is located in Omaha, Nebraska, and the plaintiff intends to call Union Pacific management officials from Omaha as witnesses on issues related to the railroad's industrial hygiene, abatement, and remediation programs related to employee asbestos exposure. ([Filing No. 18, at CM/ECF pp. 8-11](Filing No. 18, at CM/ECF pp. 8-11)). It does not appear these witnesses' experience focused specifically on potential sources of asbestos exposure by persons working in facilities located in Sioux City, Iowa. See [Filing No. 18-5](Filing No. 18-5). The plaintiff has identified only Conrad Lindquist, who resides in Dakota Dunes, South Dakota, as a railroad coworker witness. ([Filing No. 24-5, at CM/ECF p. 2](Filing No. 24-5, at CM/ECF p. 2)). Dakota Dunes is more than 100 miles from Omaha, Nebraska.

ANALYSIS

Without question, Nebraska is a proper venue for trying this case. [45 U.S.C.A. § 56](45 U.S.C.A. § 56). But so is Sioux City, Iowa. The question before the court on the defendant's motion to transfer is whether Omaha or Sioux City is the most convenient forum for the parties, witnesses, and which location best serves the interests of justice. Under section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." [28 U.S.C.A. § 1404(a)](28 U.S.C.A. § 1404(a)). "Congress cited a FELA case as an example of the need for such a

provision, and courts have consistently held that § 1404(a) applies to all actions, not just those listed in the general venue provisions." Robertson v. Kiamichi Railroad Co., L.L.C., 42 F.Supp.2d 651, 654 (E.D. Tex.1999).

When considering a motion to transfer under § 1404(a), the court must balance both the parties' private interests and the interests of the public.[1] The private interests include:

> (1) the convenience of the parties, (2) the convenience of the witnesses – including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, [and] (4) the location where the conduct complained of occurred . . . .

Terra Int'l, 119 F.3d at 696.

Public interests, designed to address § 1404(a)'s "interest of justice" factor, include: 1) judicial economy, 2) the plaintiff's choice of forum; 3) the comparative costs of litigating in each forum, 4) each party's ability to enforce a judgment, 5) obstacles to a fair trial, 6) conflict of law issues, 7) and the advantages of having a local court determine questions of local law. See Terra Int'l, 119 F.3d at 699 (citations omitted). In addition to the general factors set forth in section 1404(a), the court conducts a "case by case evaluation of the

---

[1] As recently noted by the Court in the Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 134 S.Ct. 568, 581 (2013):

> Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (internal quotation marks omitted). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Ibid. (internal quotation marks omitted). The Court must also give some weight to the plaintiffs' choice of forum. See Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

Atlantic Marine, 134 S.Ct. at 581 n. 6.

particular circumstances at hand and consider all relevant factors." Terra Int'l., Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 691 (8th Cir. 1997). The federal court gives deference to a plaintiff's choice of forum by placing the burden of proof on the party seeking transfer. Id. at 695.

Interests of the Public.

The plaintiff's right to recover will be fairly determined consistent with the remedial intent of 45 U.S.C. § 51—irrespective of whether it is tried in Omaha or Sioux City. The plaintiff's ability to recover is governed by federal law, and the Omaha and Sioux City judges are equally capable of correctly interpreting the FELA and enforcing any judgment entered. There are no foreseeable conflict of law issues. The two courts are relatively equal in terms of docket movement and potential congestion, and the costs of litigating in the two forums—located only 100 miles apart—will be virtually the same. Since Blessing lived and worked in Sioux City his entire life, the citizens in that area have an interest in the determination of this litigation, particularly where the alleged cause of Blessing's death is exposure to asbestos in their community.

Convenience of the Parties.

Judith Blessing chose <u>not</u> to file this lawsuit where she resides, but rather in Omaha; the defendant does not want it tried in Omaha, the location of its headquarters, but rather in Sioux City. Plaintiff's counsel is from Houston, Texas; the railroad's counsel is from Omaha. So while Omaha would presumably be more convenient for the railroad, and Sioux City would presumably be more convenient for the plaintiff, the parties have disregarded their personal convenience when arguing this venue issue.[2] The court will likewise disregard the parties' convenience deciding venue.

---

[2] Plaintiff's counsel does argue that the Omaha airport is larger—with more flights daily than the Sioux City airport—and therefore Omaha is more convenient for counsel and any distantly located witnesses. The court give little weight to this argument. Sioux City's airport is served by American Airlines, and while it is smaller than Omaha, Sioux City is not desolate.

Convenience of the Witnesses.

Based on the evidence before the court, the decedent's alleged exposure to asbestos occurred at his workplace in Sioux City, Iowa. His medical providers, the associated records for that medical care, and his co-workers are located in the Sioux City area, with one disclosed medical expert for the plaintiff located in Texas. The identified railroad witnesses, and the records of its industrial hygiene and asbestos abatement programs are located in Omaha.

The Sioux City and Omaha federal courthouses are 96.5 miles apart. Conrad Lindquist, Blessing's co-worker, resides beyond the Omaha court's 100-mile subpoena power, and other co-employee witness may both live and work beyond that distance as well. As to the Omaha railroad witnesses listed, their work location is within (albeit barely) 100 miles of the Sioux City federal court. Perhaps more importantly, the railroad has agreed to produce its management employees at a trial held in Sioux City. Blessing's medical providers in Sioux City, who provide patient care on a daily basis in that community, are not likely to make this same offer. And Mr. Lindquist, who himself has allegedly developed asbestos-related injuries to his lungs, (see 8:12CV251, Blessing et al v. Union Pacific Railroad Company, Filing No. 23, at CM/ECF p. 4), may be in no position (now or at the time of trial) to make such a promise.

As to the medical diagnosis issues in this case, the underlying medical and treatment records are in Sioux City. And to the extent the railroad pursues locating other potential sources of Blessing's alleged asbestos exposure (e.g., his home(s), his prior employers, his hobbies, etc.), all such information will be located in and near Sioux City. Finally, the

---

Sioux City is a metropolitan area, accessible by airplane for counsel and distant witnesses, or if they prefer, by rental car from the Omaha or Sioux Falls airports via Interstate 29. See, e.g., Charron v. Great Northern Ry. Co., 309 F. Supp. 1386 (D. Minn. 1970) (for the convenience of the parties and witnesses, transferring an FELA case from Minneapolis to Minot, North Dakota, where the accident occurred, the witnesses lived and, with the exception of one doctor in Minneapolis, all the employee's medical treatment providers lived and worked).

railroad's corporate records regarding asbestos programs and abatement efforts may be located in Omaha, but as the plaintiff's evidence of record illustrates, those records have been distributed in similar lawsuits all over the country. The plaintiff will have no difficulty accessing and producing them in Sioux City as well.

The convenience of the witnesses and access to evidence at trial weighs in favor of transferring the case to Sioux City. But Blessing argues the choice of an Omaha forum is entitled to substantial deference and the case should not be transferred to Sioux City absent exceptional circumstances. Thus, after dissecting all other evidence presented, this court's venue decision rests on how much weight is afforded to the plaintiff's choice of forum.

Plaintiff's Forum Selection.

A plaintiff's choice of forum is entitled to less deference when "(1) plaintiff does not reside in the selected forum . . . or (2) the transaction or underlying facts did not occur in the chosen forum." [Nelson v. Soo Line R. Co., 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999)](internal citations omitted). But the plaintiff argues FELA law is unique, and an injured railroad employee has a substantial, nearly controlling, right to his chosen venue based on the remedial purposes of substantive FELA law and its venue statute.

The FELA and its remedial purposes will be guarded and followed in either an Omaha or Sioux City forum. And [45 U.S.C. § 56](), the FELA venue statute, merely states which courts may hear a particular FELA action. It does not address how the court must decide among statutorily acceptable venues to promote the interests of justice and the convenience of parties and witnesses. Succinctly stated, "FELA cases are not exempt from the scope of § 1404(a) notwithstanding its broad venue provision." [Bailey v. Union Pacific R. Co., 364 F.Supp.2d 1227, 1230 (D. Colo. 2005)]().

The court finds that on balance, this case should be transferred to the United States District Court for the Northern District of Iowa, Sioux City Division, for the convenience of the witnesses and in the interests of justice. See Akers v. Norfolk & W. Ry. Co., 378 F.2d 78 (4th Cir. 1967) (holding the district court abused its discretion by failing to transfer an FELA action under § 1404(a) where the railroad's headquarters and employee records were located in Roanoke, Virginia, the location of the Western District of Virginia, but the employee's accident and all resulting treatment occurred near Huntington, West Virginia, the seat of the United States District Court for the Southern District of West Virginia, and witnesses were located beyond the subpoena power of the Roanoke court). Under the evidence presented, "Plaintiff's preference for pursuing his action in the District of [Nebraska] is entitled to little weight. It is neither his home nor the place of the accident," and "the location and convenience of counsel is a not a relevant factor." Bailey, 364 F.Supp. 2d at 1230 (transferring an FELA case from Colorado to Nebraska where the railroad employee's alleged cumulative injury arose in North Platte, Nebraska, where he lived and worked); De Jesus v. National R.R. Passenger Corp., 725 F.Supp. 207 (S.D.N.Y. 1989) (transferring the venue of an FELA case 15 miles, from the federal court in New York City, New York to the federal court in Newark, New Jersey, where the New York docket was less congested, and the railroad did business in New York, but New York had no other connection to the case, and the railroad employee worked, the accident occurred, the eyewitnesses lived, and the plaintiff received medical treatment in New Jersey). See also Lands v. St. Louis Southwestern R. Co., 648 F.Supp. 322 (E.D. Tex. 1986) (even though it was not the railroad employee's choice of forum, transferring venue of an FELA case from one Texas federal district to the Texas federal district where the accident occurred because the employee resided and was treated by numerous physicians and other health care personnel residing in the transferee district); Sackett v. Denver and Rio Grande Western R. Co., 603 F. Supp. 260 (D. Colo. 1985) (transferring an FELA action from the Colorado federal district chosen by the plaintiff to the Utah federal court where the plaintiff lived in Utah, the accident occurred in Utah, and the witnesses and medical treatment providers resided and worked in Utah); Baire v. Consolidated Rail Corp., 543 F. Supp. 584 (W.D. Pa. 1982) (transferring an FELA case for the convenience of the parties and witnesses to the federal district where the accident

occurred where the plaintiff and all necessary witnesses resided there, and the employee was hospitalized and treated in the transferee district).

Accordingly,

IT IS ORDERED:

1) The defendant's motion to transfer, ([Filing No. 14](Filing No. 14)), is granted.

2) This case shall be transferred to the United States District Court for the Northern District of Iowa, Sioux City Division.

June 4, 2014.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.